*1229
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Chapter 19.74 of the Las Vegas Municipal Code (“LVMC”) regulates the zoning of sexually-oriented businesses. Prior to September 20, 1992, LVMC 19.74.030 prohibited the establishment of sexually-oriented businesses within 1,000 feet of any church, school, park, playground, or other sexually-oriented business. The distance was measured “by the most direct route provided for pedestrian traffic from the primary public entrance of the proposed establishment to the primary public entrance of any existing church, school, park or playground or sexually oriented licensed premises.”
 

 In July of 1992, the respondent, A-Action Adult and Video (hereinafter “A-Action”) received business licenses to operate at the same location a bookstore, video center, and twenty-one coin-
 
 *1230
 
 operated amusement devices. A-Action intended to sell sexually-oriented books and videos, and the coin-operated devices were to be used within video booths (e.ginsert money and view a sexually-oriented video in the privacy of a self-enclosed booth). Nine of the twenty-one viewing booths were arranged in a rectangle shape so that all faced a small stage in the center of the rectangle. Because of the nature of its business, A-Action was required to comply with the distance requirements of LVMC 19.74.030, which it did after changing the location of its primary entrance.
 

 On September 20, 1992, the City of Las Vegas (“City”) amended the manner in which it measured the distance between sexually-oriented businesses and other establishments.
 
 [1]
 
 Additionally, the following provision was added to LVMC 19.74.040:
 

 (B) Any business existing as of September 16, 1992, that is made nonconforming by the provisions of [this ordinance] shall be permitted to remain in operation; provided, however, that:
 

 (1) No such business may be increased, enlarged, extended or altered, except to change the use to a conforming use; and (2) If any such business terminates or is abandoned for a period of at least thirty days, any future use of the property shall conform to the provisions of [this ordinance].
 

 As a result of the September 20, 1992 amending ordinance, A-Action became a “nonconforming” business because its property line was within 1,000 feet of Metropolitan Community Church’s property line; therefore, it became subject to the provision that prohibited the business from being “increased, enlarged, extended or altered,” except to a conforming use.
 

 On February 1, 1993, A-Action made application to amend its existing “coin-operated amusement center” license for the purpose of removing the video equipment from the nine viewing booths that formed the rectangular configuration and installing glass panes in order for patrons to view, after placing money in a coin-operated device, a live nude dancer on the small stage in front of the booths. The City denied A-Action’s application on the basis that such an alteration would violate the provisions of LVMC 19.74.040(B)(1).
 

 Shortly thereafter, A-Action filed a complaint in the district court in which it argued that LVMC 19.74.040 was unconstitutionally vague, and that the City had selectively enforced the code provision in derogation of A-Action’s right to equal protection of the law. A-Action’s equal protection complaint resulted from the
 
 *1231
 
 City’s accommodation of Books and Video Enterprises, an unrelated business doing business as Talk of the Town. Talk of the Town filed an application with the City on August 13, 1992, seeking business licenses to operate a bookstore, video center, and coin-operated amusement machines. Like A-Action, Talk of the Town offered to provide adult-oriented materials and entertainment to interested patrons. On August 28, 1992, well before the effective date of amended LVMC 19.74.030, the City entered its decision that Talk of the Town was located in an area properly zoned for a business of its type. However, delays caused by either the City or its fire department prevented Talk of the Town from actually receiving its licenses until after the effective date of LVMC 19.74.030.
 

 It is incontrovertible that Talk of the Town complied with the distance limitation required by the old LVMC 19.74.030 at the time it received zoning approval for all three licenses on August 28, 1992; it is equally incontrovertible that
 
 after
 
 September 20, 1992, Talk of the Town no longer complied with the distance limitation because its property line was within 1,000 feet of a church’s property line. The City issued the licenses retroactive to August 28, 1992, and Talk of the Town was allowed to commence operations as a nonconforming business.
 

 After a bench trial, the district court found that the word “altered” as used in LVMC 19.74.040(B)(1) was vague, undefined, and therefore unconstitutional; the court also found that A-Action and Talk of the Town had received disparate treatment from the City in violation of A-Action’s right to equal protection of the law. This appeal followed.
 

 DISCUSSION
 

 The City contends that the district court erred in holding that the word “altered” is unconstitutionally vague. An ordinance is unconstitutionally vague if it either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Constr. Co., 269 U.S. 385, 391 (1926). Such an ordinance is “void for vagueness” and inconsistent with due process of law. Additionally, an ordinance may be void for vagueness if its imprecision is likely to encourage arbitrary and discriminatory enforcement. Forsyth County, Ga. v. Nationalist Movement,....... U.S. .....,...., 112 S. Ct. 2395, 2403 (1992) (stating that the First Amendment prohibits the vesting of unbridled discretion in government officials); Papachristou v. City of Jacksonville, 405 U.S. 156, 170 (1972); Eaves v. Board of Clark County Comm’rs, 96 Nev. 921, 924, 620 P.2d 1248, 1250 (1980).
 

 
 *1232
 
 The City argues on appeal that LVMC 19.74.040 is not unconstitutionally vague because it plainly precludes nonconforming businesses from being “increased, enlarged, extended or altered” in any way other than to a conforming use. According to the City, each word of the foregoing phrase may be susceptible to semantical debate, yet their collective context, purpose, and effect is clear: a nonconforming business
 
 may not be changed in any way. See
 
 Grayned v. City of Rockford, 408 U.S. 104, 110 (1972) (stating that because we are condemned to the use of words, “we can never expect mathematical certainty from our language”).
 

 A-Action responds by insisting that LVMC 19.74.040 is presumptively invalid because of constitutional implications prohibiting prior restraint. Indeed, any system of prior restraint is burdened with a heavy presumption
 
 against
 
 its constitutional validity. Southeastern Promotions Ltd. v. Conrad, 420 U.S. 546, 558 (1975). We conclude, however, that the presumption of invalidity is inapplicable to the instant case.
 

 In Talk of the Town v. City of Las Vegas, 92 Nev. 466, 553 P.2d 959 (1976), an adult-oriented bookstore challenged the constitutionality of a city ordinance which required it to procure “privileged business licenses” and pay for investigations of all those “associated” with its management or ownership.
 
 Id.
 
 at 468, 553 P.2d at 960. Talk of the Town’s business involved the sale of books and other printed material, which are both “presumptively” protected by the First Amendment.
 
 Id.
 
 at 469, 553 P.2d at 961. In contrast, the form of expression A-Action seeks to protect is that which is conveyed by nude dancing. Despite A-Action’s contention that “it is uncontroverted that nude dance performances . . . are protected expression under the First and Fourteenth Amendments to the United States Constitution,” the United States Supreme Court has strongly indicated that nude dancing does not rise to the same level as other forms of protected expression.
 
 See
 
 Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991).
 

 In
 
 Barnes,
 
 the Glen Theatre supplied adult entertainment consisting of nude and seminude performances and displays of the female body through glass window panels. In a manner similar to that planned by A-Action, Glen Theatre patrons sat in private booths and inserted coins into a timing mechanism that permitted them to observe live nude and seminude dancers for a specified period of time.
 
 Id.
 
 at 563. The Glen Theatre proprietors and dancers objected to a state “public indecency law,” which required the dancers to wear G-string panties and pasties on their
 
 *1233
 
 breasts, on the grounds that the law impeded their First Amendment rights of freely expressing an erotic message.
 
 Id.
 
 at 565.
 

 The
 
 Barnes
 
 court conceded that several of the high court’s opinions contain language which suggests that nude dancing is expressive conduct protected by the First Amendment, but the court made clear its view that such dancing was only a marginally protected form of expression:
 

 In
 
 Doran v. Salem Inn, Inc.,
 
 we said: “[A] 1 though the customary ‘barroom’ type of nude dancing may involve only the barest minimum of protected expression, we recognized in
 
 California
 
 v.
 
 LaRue
 
 that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances.” In
 
 Schad v. Mount Ephraim,
 
 we said that “ [furthermore, as the state courts in this case recognized, nude dancing is not without its First Amendment protections from official regulation.” These statements support the conclusion of the Court of Appeals
 
 that nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so.
 

 Id.
 
 at 565-66 (citations omitted; emphasis added).
 

 Accordingly, we reject A-Action’s invitation to view LVMC 19.74.040 as a form of prior restraint unable to withstand the heavy presumption of unconstitutionality. Instead, we consider nude dancing for what it is: prurient entertainment only
 
 marginally
 
 within the outer perimeters of First Amendment protection.
 
 [2]
 

 A-Action’s primary complaint with LVMC 19.74.040 is that the word “altered” is so vague that it provides an unfettered discretion in City officials who are charged with its administration. We are not persuaded that the term “altered,” which in this context connotes any structural or functional form of modification or change, is beyond the ken of persons of ordinary intelligence; nor do we see ambiguity in the context surrounding the term “altered” (“increased, enlarged, extended or altered”) that facilitates an opportunity for arbitrary and discriminatory enforcement. In fact, the phrase is carefully crafted in order to
 
 prevent
 
 
 *1234
 
 such discretionary enforcement. The word “altered” conveys a clear meaning when standing on its own, and when coupled with other words of limitation, as it is here, its meaning is not rationally susceptible to an attack on grounds of vagueness.
 

 Having concluded that LVMC 19.74.040 withstands constitutional challenge, we next consider A-Action’s alternate contention that its nude dancing activity does not constitute an “alteration,” and should therefore be viewed as conforming to the ordinance. LVMC 19.74.020 sets forth ten precisely defined categories of sexually-oriented businesses. Of particular importance to us are the following two categories:
 

 Adult Motion Picture Arcade.
 

 “Adult motion picture arcade” means any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by an emphasis on depicting or describing sexual conduct or specified anatomical areas.
 

 Nude Show.
 

 “Nude show” means any establishment which provides or permits sexual conduct or the display of specified anatomical areas upon its premises as entertainment or an attraction for business.
 

 As we understand the record, A-Action’s use of twenty-one coin-operated devices to provide sexually-oriented video falls within the category of an “adult motion picture arcade,” which requires “still or motion picture machines, projectors, or other image producing devices” that are either electronic, electric, or operated by coin or slug. We fail to see how nine of those twenty-one coin-operated machines, which are now used to simply open and close access to glass windows, constitute “image producing devices” that fall within the definition of a motion picture arcade. Instead, A-Action’s modification of its booths to provide visual access to a live nude dancer changes the category in which the booths are used to that of a “nude show.” Such a change is clearly an “alteration” prohibited by LVMC 19.74.040. Under the circumstances presented here, we reject A-Action’s argument that a change in what a patron
 
 views
 
 when using a coin-operated device is not an alteration prohibited by LVMC 19.74.040.
 

 With respect to A-Action’s equal protection argument, we note
 
 *1235
 
 that a facially valid ordinance may be the vehicle for unequal protection of the law when applied in an arbitrary or discriminatory manner. Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886). More particularly, we have noted that “[e]qual protection of the law has long been recognized to mean that no class of persons shall be denied the same protection of the law which is enjoyed by other classes in
 
 like circumstances.”
 
 Allen v. State, 100 Nev. 130, 135, 676 P.2d 792, 795 (1984) (emphasis added).
 

 A-Action successfully argued below that the City arbitrarily enforced LVMC 19.74.040 when it retroactively licensed Talk of the Town, yet denied A-Action’s application to modify the nine viewing booths and add live nude dancing. We disagree with the district court’s ruling and conclude that the two establishments presented factually and significantly distinguishable requests to the City. Talk of the Town received zoning approval prior to the effective date of LVMC 19.74.030 and was retroactively licensed because of a delay in fire inspection and approval. Unlike A-Action, Talk of the Town has not attempted to increase, enlarge, extend or alter the scope of its nonconforming business, and we have no reason to believe that any such attempt by Talk of the Town would be received favorably by the City.
 

 CONCLUSION
 

 For the reasons discussed above, we conclude that LVMC 19.74.040(B)(1) is not unconstitutionally vague and that it was not applied in a disparate, discriminatory or otherwise unconstitutional manner. The order of the district court is in all aspects reversed, and its injunctive provisions against the City vacated.
 

 [1]
 

 Rather than measure from entrance to entrance, the City began measuring from property line to property line.
 
 See
 
 LVMC 19.74.030.
 

 [2]
 

 In any event, a presumptively invalid ordinance authorizing officials to license certain activity will be upheld if it establishes precise, narrowly-drawn standards to guide and limit enforcement. North Nevada Co. v. Menicucci, 96 Nev. 533, 536, 611 P.2d 1068, 1069 (1980). Likewise, a zoning regulation with an incidental impact upon marginally protected expression will be upheld if it meets the same exacting standards.