131 Nev., Advance Opinion 101

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WILLIAM ALLEN SCOTT,<br>Petitioner,<br>vs.<br>THE FIRST JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CARSON CITY; AND THE<br>HONORABLE JAMES TODD RUSSELL,<br>DISTRICT JUDGE,<br>Respondents,<br>and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 67331<br><br>FILED<br><br>DEC 3 1 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Original petition for a writ of certiorari challenging Carson City Municipal Code 8.04.050(1) as unconstitutionally overbroad and vague.

*Petition granted.*

Karin K. Kreizenbeck, State Public Defender, and Sally S. DeSoto, Chief Appellate Deputy Public Defender, Carson City,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Jason D. Woodbury, District Attorney, and Melanie Porter, Deputy District Attorney, Carson City,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

3/21/16: Corrected per letter to publishers. CJ

15-40141

## OPINION

By the Court, GIBBONS, J.:

In this opinion, we consider whether Carson City Municipal Code (CCMC) 8.04.050(1) *(2005)* is unconstitutionally overbroad and vague. Petitioner William Scott was arrested and convicted for violating CCMC 8.04.050, which makes it "unlawful for any person to hinder, obstruct, resist, delay, molest or threaten to hinder, obstruct, resist, delay or molest any . . . member of the sheriff's office . . . in the discharge of his official duties." We grant Scott's petition for a writ of certiorari and conclude that CCMC 8.04.050(1) is both unconstitutionally overbroad and vague on its face.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:15 a.m., a Carson City sheriff's deputy pulled over a vehicle for running a stop sign. The vehicle had three occupants. When questioning the driver, the deputy smelled alcohol coming from the vehicle. The deputy asked the driver if he would submit to a voluntary field sobriety test. Before the driver could answer, petitioner William Scott, who was a passenger in the vehicle, interrupted the deputy. The deputy continued to question the driver, and according to the deputy, Scott interrupted him a second time and told the driver not to do anything the deputy said. Scott allegedly went on to state "that his dad [was] a lawyer and he knows all about the law." After the second interruption, the deputy threatened Scott with arrest "for obstructing and delaying a peace officer" if he did not remain quiet.

After a third interruption, the deputy ordered Scott out of the vehicle. The deputy arrested Scott and called for backup. Scott cooperated during the arrest. A second deputy transported Scott to jail, and the first deputy resumed his DUI investigation of the driver.

 

The State charged Scott with obstructing a public officer in violation of CCMC 8.04.050. After a bench trial in Carson City Justice Court, Scott was convicted of obstructing a public officer in violation of CCMC 8.04.050.

Scott appealed his conviction to the district court. On appeal, Scott argued that CCMC 8.04.050(1) is unconstitutionally overbroad and vague because it restricts constitutional speech. The district court, however, affirmed the conviction, concluding that CCMC 8.04.050 is constitutional. Specifically, the district court concluded that the deputy did not arrest Scott for his *speech*, but rather for his *conduct*, i.e., the *act* of speaking in a way that interrupted the deputy's investigation. This petition for a writ of certiorari followed.

## DISCUSSION

In this writ petition, Scott argues that CCMC 8.04.050(1) is both unconstitutionally overbroad and vague.[1] We review the constitutionality of a statute or ordinance de novo. *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009). The municipal code at issue, CCMC 8.04.050, states:

> 1. It is unlawful for any person to hinder, obstruct, resist, delay, molest or threaten to hinder, obstruct, resist, delay or molest any city officer or member of the sheriff's office or fire department of Carson City in the discharge of his official duties.

---

[1]Although the State charged Scott under CCMC 8.04.050 and uses language from 8.04.050(2) to describe Scott's interference, we limit our review to CCMC 8.04.050(1) because at oral argument Scott conceded that his constitutional challenge was limited to section 1 of the ordinance.

*CCMC 8.04.050(1) is unconstitutionally overbroad*

Scott argues that CCMC 8.04.050(1) is unconstitutionally overbroad because it criminalizes speech that is protected by the First Amendment of the United States Constitution. We agree.

"Whether or not a statute is overbroad depends upon the extent to which it lends itself to improper application to protected conduct." *N. Nev. Co. v. Menicucci*, 96 Nev. 533, 536, 611 P.2d 1068, 1069 (1980). Specifically, "[t]he overbreadth doctrine invalidates laws . . . that infringe upon First Amendment rights." *Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 297, 129 P.3d 682, 687 (2006). In other words, the overbreadth doctrine applies to statutes that have a seemingly legitimate purpose but are worded so broadly that they also apply to protected speech. *See id.* We have held that "[e]ven minor intrusions on First Amendment rights will trigger the overbreadth doctrine." *Id.* at 297-98, 129 P.3d at 688. At the same time, however, we have warned that "the overbreadth doctrine is strong medicine and that a statute should not be void unless it is substantially overbroad in relation to the statute's plainly legitimate sweep." *Id.* at 298, 129 P.3d at 688 (internal quotations omitted).

The United States Supreme Court considered whether laws similar to CCMC 8.04.050(1) were overbroad in *Colten v. Kentucky*, 407 U.S. 104 (1972), and *City of Houston, Texas v. Hill*, 482 U.S. 451 (1987), and in doing so reached different results. In *Colten*, the defendant was arrested for violating Kentucky's disorderly conduct statute, which made it illegal for a person "*with intent to cause* public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [t]o [c]ongregate[ ] with other persons in a public place and refuse[ ] to comply with a lawful order of the police to disperse." *Id.* at 108 (emphasis added). Due in part to the

statute's specific intent requirement, the Court affirmed the lower court's determination that the statute was not overbroad. *Id.* at 108-09, 111.

In *Hill*, however, the Court determined that an ordinance similar to the statute in *Colten* was facially invalid. 482 U.S. at 467. The ordinance made it "unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 461 (internal quotation omitted).[2] Ultimately, the Court concluded that the challenged language was unconstitutionally overbroad for two reasons. First, the Court concluded that the ordinance did not deal "with core criminal conduct, but with speech." *Id.* at 460. The Court reasoned that the challenged portion of the ordinance—making it unlawful to "oppose, molest, abuse or interrupt" an officer—dealt with speech because it prohibited "verbal interruptions of police officers." *Id.* at 461 (internal quotation omitted).

Second, the Court concluded that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* The Court recognized, however, that the First Amendment does not protect "fighting words," or words "that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 461-62 (internal quotations omitted). Thus, the Court concluded that the ordinance was facially invalid because its application to speech was not limited to "fighting words." Instead, the ordinance criminalized *all* speech that interrupts a police officer. *Id.* at 462. The Court reasoned that "[t]he Constitution does not allow such speech to be made a crime.

_____

[2]The Court reasoned that the portions of the ordinance that clearly dealt with *conduct*—making it unlawful to "assault" or "strike" an officer— were preempted by state law and therefore did not address that portion of the ordinance. *Hill*, 482 U.S. at 461 n.9.

The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63. In sum, the Court found that the ordinance was unconstitutionally overbroad because it was "not narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 465.

While the statute in *Colten* and the ordinance in *Hill* feature similar language, we conclude that CCMC 8.04.050(1) aligns more closely with the ordinance in *Hill*. Unlike the statute in *Colten*, which required specific intent, CCMC 8.04.050(1) does not contain a specific intent requirement.[3] Like the ordinance in *Hill*, CCMC 8.04.050(1) prohibits *any* conduct that may "hinder, obstruct, resist, delay, [or] molest" a police officer, regardless of intent.[4] Under CCMC 8.04.050(1), inadvertent,

---

[3]Our dissenting colleagues would read an intent requirement into CCMC 8.04.050 to save the ordinance. However, the inclusion of an intent requirement alone will not render CCMC 8.04.050 constitutional. CCMC 8.04.050(1) makes it unlawful to "*threaten* to hinder, obstruct, resist, delay or molest" a sheriff's deputy in the discharge of his or her duties. (Emphasis added.) For example, an individual may *threaten* to *delay* a sheriff's deputy in the discharge of his duties by stating that she intends to exercise her *Miranda* rights or by advising a counterpart to do so— thereby delaying the deputy. As such, reading an intent requirement into CCMC 8.04.050(1) will not render the law constitutional.

[4]Our dissenting colleagues express concern that invalidating CCMC 8.04.050(1) will effectively invalidate similar provisions in other Nevada municipalities. This concern is misplaced. The State could have charged Scott for his interference under NRS 199.280. Unlike CCMC 8.04.050, the state statute is explicitly limited by an intent requirement. Under NRS 199.280, it is a crime when one "*willfully* resists, delays or obstructs a public officer in discharging or attempting to discharge any legal duty of his or her office." (Emphasis added.) As such, NRS 199.280 provides a corollary under which one may be charged for the same or similar willful conduct.

constitutionally protected speech or conduct is sufficient to trigger liability should it hinder or obstruct a police officer in any way. For example, if a sheriff's deputy is conducting an investigation in a public area and a passerby inadvertently obstructs the deputy's view of a suspect, the passerby could be arrested for hindering or delaying the deputy's investigation—despite lacking the intent to do so.

We conclude that CCMC 8.04.050(1) is unconstitutionally overbroad on its face for the same two reasons recognized in *Hill*. First, CCMC 8.04.050(1) applies to speech. The State argues that Scott was not arrested for his *speech*, but rather for his *conduct*, i.e., the *act* of speaking in a way that interrupted the deputy's investigation. We deem this narrow distinction unpersuasive under the facts. CCMC 8.04.050(1) makes it "unlawful for any person to hinder, obstruct, resist, delay, [or] molest" a police officer. Indeed, like the ordinance in *Hill*, CCMC 8.04.050(1) clearly affects speech because Scott was convicted under it for his "verbal interruptions" of the sheriff's deputy. *Hill*, 482 U.S. at 461. Moreover, CCMC 8.04.050(1) makes it unlawful to even "*threaten* to hinder, obstruct, resist, delay or molest" a police officer. (Emphasis added.) Criminalizing mere threats further implicates speech as opposed to conduct.

Second, like in *Hill*, where the ordinance's application to speech was not limited to "fighting words," CCMC 8.04.050(1) prohibits *all* speech that "hinder[s], obstruct[s], resist[s], delay[s], [or] molest[s]" a police officer. Scott stated that "he knows all about the law" and told the driver that he was not required to cooperate with the deputy. These statements cannot be construed as "fighting words," or words "that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Hill*, 482 U.S. at 461-62 (internal quotations omitted). Yet, Scott was still arrested and convicted under CCMC 8.04.050(1). Indeed,

"[t]he Constitution does not allow [Scott's verbal challenge to the deputy's authority] to be made a crime." *Hill*, 482 U.S. at 462.

In sum, CCMC 8.04.050(1) encompasses protected speech and "is not narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 465. As such, we conclude that it is unconstitutionally overbroad on its face.

*CCMC 8.04.050(1) is unconstitutionally vague*

Scott argues that CCMC 8.04.050(1) is unconstitutionally vague because (1) ordinary people cannot tell what conduct or speech is prohibited, and (2) its lack of guidelines allows the sheriff to enforce it in an arbitrary and discriminatory fashion.

"The void-for-vagueness doctrine is predicated upon a statute's repugnancy to the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Silvar*, 122 Nev. at 293, 129 P.3d at 684-85. A criminal statute can be invalidated for vagueness "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *State v. Castaneda*, 126 Nev. 478, 481-82, 245 P.3d 550, 553 (2010) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)). Although similar, "[t]he first prong is concerned with guiding those who may be subject to potentially vague statutes, while the second—and more important—prong is concerned with guiding the enforcers of statutes." *Silvar*, 122 Nev. at 293, 129 P.3d at 685. Additionally, "[a] statute containing a criminal penalty is facially vague when vagueness permeates the text of the statute." *Flamingo Paradise*, 125 Nev. at 507, 217 P.3d at 550 (recognizing that while the two-factor

test for vagueness challenges applies to both civil and criminal statutes, criminal statutes are held to a higher standard).[5]

*CCMC 8.04.050(1) authorizes arbitrary and discriminatory enforcement*

We conclude that under the second prong—arbitrary and discriminatory enforcement—CCMC 8.04.050(1) is unconstitutionally vague. The second prong requires guidelines for when a criminal statute will be enforced. When a city ordinance "does not enumerate circumstances for which a person could be arrested[,] . . . the enforcing officer has discretion over deciding whether a particular unenumerated circumstance supplies the necessary probable cause for arrest." *Silvar*, 122 Nev. at 295, 129 P.3d at 686. "This standard could shift from officer to officer or circumstance to circumstance because the ordinance lacks definitive guidelines." *Id.* Although drafting precise laws is often difficult, the United States Supreme Court has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Hill*, 482 U.S. at 465.

In the present case, CCMC 8.04.050(1) "lacks specific standards," and thus, sheriff's deputies are allowed to enforce the law in an arbitrary and discriminatory fashion. *Silvar*, 122 Nev. at 293, 129 P.3d at 685. Specifically, the municipal code is worded so broadly that sheriff's deputies are given "unfettered discretion to arrest individuals for words or

---

[5]"Under the higher standard, the question becomes whether vagueness so permeates the text that the statute cannot meet these requirements in most applications; and thus, this standard provides for the possibility that some applications of the law would not be void, but the statute would still be invalid *if void in most circumstances.*" *Flamingo Paradise*, 125 Nev. at 513, 271 P.3d at 554 (emphasis added) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)).

conduct that annoy or offend them." *Hill*, 482 U.S. at 465. As stated above, the plain language of CCMC 8.04.050(1) criminalizes *any* conduct or speech that in *any way* "hinder[s], obstruct[s], resist[s], delay[s], molest[s] or threaten[s] to hinder, obstruct, resist, delay or molest" a sheriff's deputy "in the discharge of his official duties." For example, if a sheriff's deputy is directing traffic at an intersection, and a pedestrian politely asks the deputy for directions, the pedestrian could be arrested for hindering or delaying the deputy's ability to direct traffic. Vagueness permeates the text of CCMC 8.04.050(1) because, as in this case, it is entirely within the deputy's discretion to determine what conduct violates the ordinance and at what point that conduct—including speech—reaches a level that "hinder[s], obstruct[s], resist[s], delay[s], or molest[s]" him or her in the discharge of their duties. It is obvious that the prohibitions in CCMC 8.04.050(1) are "violated scores of times daily, . . . yet only some individuals—those chosen by the police in their unguided discretion—are arrested." *Hill*, 482 U.S. at 466-67.

The dissent would read CCMC 8.04.050(1) to have "a core of constitutionally unprotected expression to which it might be limited," unlike the ordinance in *Hill*. *Id*. at 468 (internal quotation omitted). However, not only is the language used in CCMC 8.04.050(1) strikingly similar to the language used in *Hill*, it explicitly includes speech.[6] *See id.* at 461 (making it unlawful to "in any manner oppose, molest, abuse or

---

[6]Both the ordinance in *Hill* and CCMC 8.04.050 use the term "molest." *Compare* 482 U.S. at 461 *with* CCMC 8.04.050(1). Further, CCMC 8.04.050 uses the term "resist," which is defined as "[t]o oppose," whereas the ordinance in *Hill* used the term "oppose." *Compare Resist, Black's Law Dictionary* (6th ed. 1990), *and Hill*, 482 U.S. at 461, *with* CCMC 8.04.050(1).

interrupt any policeman in the execution of his duty" (internal quotation omitted)). The language in CCMC 8.04.050(1) makes it unlawful to "hinder, obstruct, resist, delay, molest or *threaten* to hinder, obstruct, resist, delay or molest" a sheriff's deputy in the discharge of his or her duties. (Emphasis added.) We find the dissent's distinction between the language in these laws unpersuasive. Further, CCMC 8.04.050(1) explicitly applies to speech and is not in any way limited to fighting words. A verbal "threat" to exercise a constitutional right that may delay an arrest would clearly constitute an unlawful act. The Supreme Court could not read the ordinance in *Hill* to find a core of criminal conduct, and we are unable to do so with CCMC 8.04.050(1).

Further, despite the State's argument to the contrary, it is inconsequential that an adjudicative body can determine, after the fact, whether CCMC 8.04.050(1) was applied in an arbitrary or discriminatory fashion. *See id.* at 465-66 ("As the Court observed over a century ago, '[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" (quoting *United States v. Reese*, 92 U.S. 214, 221 (1876))). Consequently, we conclude that CCMC 8.04.050(1) is unconstitutionally vague because it lacks sufficient guidelines and gives the sheriff too much discretion in its enforcement.[7]

---

[7]We do not address whether the ordinance fails to provide a person of ordinary intelligence fair notice of what is prohibited because, as we clarified in *Castaneda*, a statute is unconstitutionally vague if it fails either prong of the vagueness test. 126 Nev. at 481-82, 245 P.3d at 553. It is sufficient that the ordinance permits arbitrary and discriminatory enforcement.

## CONCLUSION

CCMC 8.04.050(1) is unconstitutionally overbroad because it "is not narrowly tailored to prohibit only disorderly conduct or fighting words." *Hill*, 482 U.S. at 465. CCMC 8.04.050(1) is unconstitutionally vague because it lacks sufficient guidelines and gives the sheriff too much discretion in its enforcement. Accordingly, we grant Scott's petition and direct the clerk of this court to issue a writ of certiorari instructing the district court to vacate its order denying Scott's appeal. We further remand to the district court with instructions to enter an order reversing Scott's conviction in part on the grounds that CCMC 8.04.050(1) is unconstitutional on its face and to determine whether Scott may properly be charged under the remainder of CCMC 8.04.050.

_____, J.
Gibbons

We concur:

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

HARDESTY, C.J., with whom PICKERING, J., agrees, concurring in part and dissenting in part:

I concur only in the majority's decision that Scott's petition should be granted; I dissent because I disagree that CCMC 8.04.050(1) is unconstitutionally overbroad and vague on its face.

Pursuant to CCMC 8.04.050(1), it is illegal for a "person to hinder, obstruct, resist, delay, molest or threaten to hinder, obstruct, resist, delay or molest" an officer from performing his duties. The majority's decision to facially invalidate CCMC 8.04.050(1) ignores reasonable constitutional construction rules that would resolve the overbreadth and vagueness claims.

*CCMC 8.04.050(1) should be narrowly construed*

While I recognize that CCMC 8.04.050(1) may be ambiguous and as a result suggests overbreadth and vagueness issues, I disagree with the majority's conclusion that it is facially unconstitutional thereby voiding it. Many municipalities in this state have similar provisions to CCMC 8.04.050(1).[1] Because the majority facially invalidates it, their

---

[1]*See, e.g.*, Las Vegas Municipal Code 10.04.010 (2009) ("Any person who shall interfere with, resist, molest or threaten to molest any Peace Officer of the Las Vegas Metropolitan Police Department in the exercise of his official duties shall be guilty of a misdemeanor."); North Las Vegas Municipal Code 9.08.010 (1996) ("Any person who shall interfere with, obstruct, resist, molest, strike or threaten to molest or strike any peace officer of the city of North Las Vegas, while in the exercise of his official duties, shall be guilty of a misdemeanor."); Fallon Municipal Code 9.02.010(A) (2014) ("It is unlawful for any person within the corporate limits of the city . . . [t]o hinder, obstruct, resist, molest or attempt to hinder, obstruct, resist or molest any city officer or member of the police department in the discharge of his or her official duties.").

decision almost certainly makes analogous laws around the state unconstitutional.[2]

Moreover, voiding CCMC 8.04.050(1) is contrary to the established requirement "'that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552 (2010) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). We have consistently recognized that "[e]nough clarity to defeat a vagueness challenge may be supplied by judicial gloss on an otherwise uncertain statute." *Id.* at 483, 245 P.3d at 553 (internal quotations omitted); *see also City of Houston, Tex. v. Hill*, 482 U.S. 451, 467-68 (1987) (noting that "limiting constructions" can be adopted by state courts to bring ambiguous laws within constitutional bounds). Accordingly, the majority is required to interpret the ordinance in a constitutional manner.

Of course, before we interpret a law, we first must determine whether "the language of [the ordinance] is plain and unambiguous, such that it is capable of only one meaning." *MGM Mirage v. Nev. Ins. Guar. Ass'n*, 125 Nev. 223, 228-29, 209 P.3d 766, 769 (2009). If the language is

---

[2]The majority argues that concern over the constitutionality of other municipality ordinances is misplaced because NRS 199.280 prevents the same conduct. Majority opinion *ante* p. 6 n.4. NRS 199.280 states that it is a misdemeanor or felony to "willfully resist[], delay[] or obstruct[] a public officer in discharging or attempting to discharge any legal duty of his or her office." Notably, "resist," "delay," and "obstruct" appear in both NRS 199.280 and CCMC 8.04.050(1). The only difference between the two provisions is that NRS 199.280 mandates willfulness—in other words requiring intent. Thus, the majority either (1) tacitly concedes that interpreting an intent requirement into CCMC 8.04.050(1) renders it constitutional, or (2) points to a statute that under the majority's analysis is also facially unconstitutional.

unambiguous, we must give effect to the ordinance's plain meaning. *Id.* at 228, 209 P.3d at 769. But if the ordinance "is susceptible to differing reasonable interpretations, [it] should be construed consistently with" the enabling body's intent. *Star Ins. Co. v. Neighbors*, 122 Nev. 773, 776, 138 P.3d 507, 510 (2006) (internal quotations omitted).

I concede for purposes of this analysis that CCMC 8.04.050(1) is ambiguous, but that does not result in the ordinance becoming unconstitutionally vague. *See City of Las Vegas v. Eighth Judicial Dist. Court*, 118 Nev. 859, 866-67, 59 P.3d 477, 482-83 (2002) (implying that the difference between an ambiguous statute and an unconstitutionally vague statute is the level of ambiguity), *abrogated on* ~~different~~ *other grounds by Castaneda*, 126 Nev. at 482 n.1, 245 P.3d at 553 n.1. Rather, "every reasonable construction must be resorted to, in order to save [the ordinance] from unconstitutionality." *Castaneda*, 126 Nev. at 481, 245 P.3d at 552 (internal quotations omitted); *see also Panama Ref. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting) ("[W]hen a statute is reasonably susceptible of two interpretations, by one of which it is unconstitutional and by the other valid, the court prefers the meaning that preserves to the meaning that destroys."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 66 (2012) ("An interpretation that validates outweighs one that invalidates . . . .").

Here, the majority chooses to invalidate CCMC 8.04.050(1) despite there being reasonable unambiguous constructions that would make the ordinance constitutional. There are two such reasonable constructions, which together easily render CCMC 8.04.050(1) constitutional: (1) interpret it as applying only when physical conduct or fighting words interfere with an officer's job duties, and (2) require an

Supreme Court
OF
Nevada

(O) 1947A

intent to interfere with an officer, which would substantially narrow and clarify the ordinance's meaning.

Interpreting CCMC 8.04.050(1) to require core criminal conduct—physical assaults or fighting words—is consistent with the United States Supreme Court's decision in *Hill*, the ordinance's language, and proper statutory construction principles. In *Hill*, the Court was asked to determine the constitutionality of a Houston ordinance that stated that "[i]t shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." 482 U.S. at 455 (internal quotations omitted). The Court determined that the ordinance could not be reasonably "limited to 'core criminal conduct'" because the words "assault" and "strike" were preempted by Texas law. *Id.* at 468. Thus, the Court invalidated the ordinance, determining that the remaining language in the ordinance "simply has no core of constitutionally unprotected expression to which it might be limited."[3] *Id.* (internal quotations omitted).

Here, the crux of the majority's argument is that the words "hinder, obstruct, resist, delay, [or] molest" unreasonably restrict persons from exercising their constitutional right to expression when an officer is discharging his duties. Majority opinion *ante* pp. 6-10. But, I believe that

---

[3]The Supreme Court of Iowa did exactly this in *State v. Bower*, where the relevant statute prohibited conduct that "willfully prevents or attempts to prevent any public officer . . . from performing the officer's . . . duty." 725 N.W.2d 435, 442 (Iowa 2006). "[T]o avoid the risk of constitutional infirmity," the court construed the statute "to prohibit only physical conduct and fighting words that hinder or attempt to hinder an officer from performing an officer's duty." *Id.* at 444. In so holding, the court relied exclusively on the *Hill* analysis. *Id.* at 443-44.

a reasonable reading of these words "has [a] core of constitutionally unprotected expression to which it might be limited." *Hill*, 482 U.S. at 468 (internal quotation omitted). None of the phraseology in subsection 1 is preempted by state law, unlike in *Hill*; thus all can be considered. The plain meanings of hinder, obstruct, resist, delay, and molest[4] can be reasonably construed to include physical conduct or fighting words. Additionally, all five verbs are associated in a common list, so the canon of construction *noscitur a sociis* ("it is known by its associates") should be considered. Scalia & Garner, *supra*, at 195. The canon stands for the proposition that "[a]ssociated words bear on one another's meaning." *Id.* As such, it is entirely reasonable to construe the five verbs as only applying where there is core criminal conduct—physical interference with an officer or spoken fighting words.[5] While I believe that this construction, by itself, saves CCMC 8.04.050(1) from a facial constitutional challenge, next I discuss a second construction that can further limit the subsection's reach.

---

[4]"Hinder" is defined as "to impede, delay, or prevent." *Hinder, Black's Law Dictionary* (10th ed. 2014). "Obstruct" is defined as "[t]o block or stop up (a road, passageway, etc.); to close up or close off, esp[ecially] by obstacle." *Obstruct, Black's Law Dictionary* (10th ed. 2014). "Resist" is defined as "[t]o oppose. This word properly describes an opposition by direct action and *quasi* forcible means." *Resist, Black's Law Dictionary* (6th ed. 1990). "Delay" is defined as "[t]he act of postponing or slowing." *Delay, Black's Law Dictionary* (10th ed. 2014). "Molest" is defined as "to annoy, disturb, or persecute esp[ecially] with hostile intent or injurious effect." *Molest, Merriam-Webster's Collegiate Dictionary* (11th ed. 2011).

[5]Fighting words are words by which "their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).

SUPREME COURT
OF
NEVADA

(O) 1947A

5

The second construction is outlined in *Hill*'s concurrence and dissent, where the dissenting justices determined that the Houston ordinance at issue did not have a mens rea term but that a Texas statute required all criminal laws to mandate some form of culpability. 482 U.S. at 473-74 (Powell, J., concurring in part and dissenting in part). Justice Powell noted that Texas courts could read an intent requirement into the ordinance based on the Texas statute. *Id.* at 474. Furthermore, Texas courts could determine that the ordinance required intent to interfere with an officer's duties, not simply an intent to speak. *Id.* Should a Texas court construe the ordinance in such a way, Justice Powell surmised:

> "This interpretation would change the constitutional questions in two ways: it would narrow substantially the scope of the ordinance, and possibly resolve the overbreadth question; it also would make the language of the ordinance more precise, and possibly satisfy the concern as to vagueness."

*Id.*

Similarly, in *Colten v. Kentucky*, 407 U.S. 104 (1972), the Court considered a Kentucky statute that criminalized an "intent to cause public inconvenience, annoyance or alarm." *Id.* at 108 (internal quotations omitted). The statute was challenged as being unconstitutionally overbroad and vague, despite a Kentucky court narrowly construing the statute to apply only "where there is no bona fide intention to exercise a constitutional right or where the interest to be advanced by the individual's exercise of the right is insignificant in comparison" to its burden. *Id.* at 104. The Court held that because of the intent requirement and narrow construction, the Kentucky "statute comes into operation only when the individual's interest in expression, judged in the light of all relevant factors, is minuscule compared to a particular public interest in

Supreme Court
of
Nevada

(O) 1947A

preventing that expression or conduct at that time and place." *Id.* at 111 (internal quotations omitted).

Like the Houston ordinance in *Hill*, CCMC 8.04.050(1) does not have a mens rea term. Additionally, Nevada, like Texas, requires that "[i]n every crime or public offense there must exist a union, or joint operation of act and intention." NRS 193.190. This court should construe CCMC 8.04.050(1) pursuant to NRS 193.190 and conclude that "[i]t is unlawful for any person to hinder, obstruct, resist, delay, molest or threaten to hinder, obstruct, resist, delay or molest," CCMC 8.04.050(1), only if the person commits a physical act or speaks fighting words, and has an intent to interfere with an officer's duties.[6] Such a construction would resolve the claims of overbreadth and vagueness because the ordinance would only come into operation when the right to expression "is 'minuscule' compared to" the public's interest in a functioning police force. *Colten*, 407 U.S. at 111. Moreover, this construction would narrow the application of CCMC 8.04.050(1) to those acts that are proven to violate NRS 193.190.

---

[6]The majority in *Hill* did note that an intent requirement, by itself, would not bring the Houston ordinance within constitutional bounds. 482 U.S. at 469 n.18. However, the majority did not indicate that an intent requirement would not narrow and clarify the statute, so as to bring it at least closer to being within constitutional parameters. Therefore, when the intent requirement is read in conjuncture with the core criminal conduct requirement, there is little doubt that CCMC 8.04.050(1) withstands constitutional scrutiny.

Notably, the majority only mentions this limiting construction by stating that "an intent requirement alone will not render CCMC 8.04.050 constitutional." Majority opinion *ante* p. 6 n.3. As discussed in footnote 2 above, the majority's conclusion is inconsistent with its contention that NRS 193.280 is constitutional because it contains the word "willful."

SUPREME COURT
OF
NEVADA

(O) 1947A

For these reasons, I would grant the petition and instruct the district court to vacate its order denying Scott's appeal and remand the matter to the lower court for a new trial.

_____, C.J.
Hardesty

I concur:

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A